# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MELISSA BODEN, | : | Case No. 3:11-cv-321 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | | |

## REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE REVERSED; (2) THIS CASE BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Melissa Boden ("Plaintiff") "not disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). *See* doc 6-2 at PageID 63.[2]

This case is before the Court upon Plaintiff's Statement of Errors (doc. 12), the Commissioner's Memorandum in Opposition (doc. 13), Plaintiff's Reply (doc. 14), the administrative record (doc. 6), and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed her application for DIB on July 26, 2007, asserting that she has been under a "disability" since January 1, 2007. PageID 181-88.

Following initial administrative denials of her application, Plaintiff received a hearing before ALJ Thomas McNichols, II on June 21, 2010. PageID 77. On July 27, 2010, ALJ McNichols issued a written decision, concluding that Plaintiff could "mak[e] a successful adjustment to other work that exists in significant numbers in the national economy" and was therefore "not disabled." PageID 51-63.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since January 1, 2007, the alleged disability onset date (20 CFR 404.1571, *et seq*).

3. The claimant has the following severe impairments: chronic low back pain secondary to degenerative disc disease with residuals of multiple surgeries and a depressive order (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she must be permitted the opportunity to alternate her position between sitting and standing at 30-minute intervals; she should not be exposed to hazards or unprotected heights; she should not climb ladders, ropes, or scaffolds but may occasionally climb stairs; she should not perform more than occasional balancing, stooping, kneeling, crouching, or crawling; she should not be required to maintain concentration on a single task for longer than 15

  minutes at a time; and she should not lift more than 10 pounds.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on March 25, 1968, and was 38 years old, which is defined as a "younger individual age 18-44," on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under disability, as defined in the Social Security Act, from January 1, 2007, through the date of this decision (20 CFR 404.1520(g)).

PageID 53-63.

On July 15, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 44-47; *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thereafter, Plaintiff filed this timely appeal on September 8, 2011. Doc. 2.

**B. Plaintiff's Hearing Testimony**

At the administrative hearing, Plaintiff testified that she is 42 years old, 5'6" tall, and weighs 165 pounds. PageID 78-79. She stated that she cannot work due to chronic neck and back pain caused by four herniated discs in her back and one in her neck. PageID 83. She has had multiple surgeries, but the pain and other back ailments have failed to be corrected. PageID

81-85. She also testified to suffering from depression, anxiety, an inability to concentrate, and feelings of worthlessness. PageID 85-87. Plaintiff also reported headaches occurring at least three times a week, and testified to having problems with weakness, muscle spasms, numbness in her hands, and swelling in various parts of her body. PageID 89-90, 104-05.

Plaintiff lives with her husband and two children. PageID 79. She does not have a driver's license. PageID 80. She testified that she has no income at the present time. *Id*. Plaintiff was last employed as a part-time bartender at a Buffalo Wild Wings restaurant where her husband was the manager. PageID 88, 103-04. She testified that because of her neck and back problems, she was unable to do many of the tasks required by her job, and often asked for assistance in performing her assigned tasks. PageID 94. She stated that she left her last job because the pain in her back would not allow her to stand or walk. PageID 81-82.

Plaintiff testified that she could likely climb shorter steps, walk one or two blocks, sit for up to forty-five minutes at a time, and lift up to five pounds. PageID 92-94. She experiences pain from her neck to her low back, as well as her legs. PageID 89. She also has trouble sleeping. PageID 91. Plaintiff further testified that she is unable to sit and type on a computer or read because of numbness in her neck, which radiates into her arms. *Id*. She experiences numbness and tingling in her fingers, and constantly drops things. PageID 102-03. She believes the pain in her neck and mid-back is getting worse, but the pain in her low back is stable. PageID 92. She takes medication for the pain, but no longer takes anxiety or depression medication because it causes her to feel "like a zombie." PageID 87.

Plaintiff acknowledged cooking, doing dishes, sweeping floors, mopping, vacuuming, and washing clothes since her alleged onset date of disability. However, she stated that because of her back and neck problems, she is unable to do these activities regularly. PageID 97.

Plaintiff testified that she has no hobbies. *Id*. She also testified that she has a poor appetite, and smokes between twelve to fifteen cigarettes per day. PageID 99. Plaintiff is able to feed, dress, and groom herself. *Id*.

Plaintiff testified that prior to her most recent surgery, during a typical day, she would get out of bed around 8:30 a.m. to take pain medication, but would return to bed until the medication kicked-in. *Id*. Plaintiff would then shower and get ready for work. *Id*. Plaintiff would then work from 10:30 a.m. to 4:00 p.m. on Tuesdays through Fridays. PageID 100-03. Upon arriving home from work, Plaintiff stated that she would immediately lay down and go to bed. PageID 96. Plaintiff further testified that she was able to focus and concentrate on a thirty minute television show. PageID 106-07. Additionally, she stated that she did not work every day in her restaurant job, or for the full amount of time that she was scheduled to work. PageID 103. Plaintiff reported that she would call in to her husband (the restaurant manager) on days where she was unable to work or when she needed to leave early. *Id*. Plaintiff testified that she believed she performed approximately thirty percent of the work required of bartenders at the restaurant where she worked. PageID 108.

### C. Vocational Expert Testimony

Eric Pruitt, a vocational expert ("VE"), testified at the hearing. PageID 108-17. The VE testified that, given restrictions to occasional stooping, crouching, and kneeling, Plaintiff could not perform her prior work as a bartender or a waitress, but could perform her past relevant work as a cashier. PageID 114. Based on Plaintiff's RFC, age, education, work experience, and her various work restrictions, the VE testified that Plaintiff would be able to perform the requirements of 4,000 unskilled light jobs, such as a conveyor line bakery worker and box ceiling inspector, and 2,800 unskilled sedentary jobs, such as food and beverage order clerk.

PageID 111-114.

## II. APPLICABLE LAW

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging

in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. OPINION AND ANALYSIS

As a preliminary note, the pertinent medical findings and opinions have been adequately summarized in the parties' briefs, *see* doc. 12 at PageID 686-90; doc. 13 at PageID 698-704, and the Court will not fully repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

In her Statement of Errors, Plaintiff makes several arguments, all of which relate to the ALJ's consideration of Plaintiff's pain and treatment of her pain. Doc. 12. For the reasons that

follow, the Court finds the ALJ's decision is not supported by substantial evidence, and should be reversed.

It is well-established that the findings and opinions of treating physicians are generally entitled to substantial weight. Moreover, if those treating physicians' opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and uncontradicted by other substantial evidence, they are entitled to controlling weight. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations). "[A] finding that a treating source medical opinion…is not entitled to controlling weight [does] not [mean] that the opinion should be rejected." *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) (*quoting Blakley*, 581 F.3d at 408).

When the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician's opinion, based on the evidence in the record, and these reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. *Id*. (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188, at *5). The ALJ's failure to adequately explain the reasons for the weight given a

treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id*. at 407.

As an initial matter, the Court acknowledges that an ALJ is not required to accept a physician's conclusion that his or her patient is "unemployable." Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "giv[en] any special significance." 20 C.F.R. § 404.1527(e). *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician").

Nevertheless, in this case, the ALJ failed to provide an adequate justification for failing to give controlling or even deferential weight to the opinion of Plaintiff's treating physician, Krishna Reddy, M.D. *See Blakley*, 581 F.3d at 406. Although the ALJ determined that Dr. Reddy's opinion -- that Plaintiff is unable to perform more than part-time work -- was "not supported by the objective and clinical findings and appears to be a dramatically more pessimistic outlook than the evidence supports," PageID 58, the basis for the ALJ's determination in this regard is unclear. For instance, in a letter dated June 23, 2009, Dr. Reddy opined that Plaintiff is "limited to part time work and…she will have extreme difficulty continuing to work…bas[ed] on her history and physical, MRI findings, EMG findings, and epidurography findings." PageID 599. Dr. Reddy's opinion is consistent with Plaintiff's most recent work history, in which she was only able to work part time, and is supported by several years' worth of treatment records from herself and her physician-colleagues at the Dayton Pain Center which consistently include objective clinical findings of Plaintiff's physical limitations, modifications to her prescribed medicinal regimen, and findings based upon her own clinical

tests and tests performed by other physicians. *See* PageID 373-74, 425-26, 429, 514-617; *see also* 20 C.F.R. § 416.913.

In his analysis, the ALJ discounted Dr. Reddy's opinion on the grounds that "[s]he is only a 'pain management specialist,' and [her] treatment consists solely of listening to the claimant's subjective complaints and prescribing medication." PageID 61. If anything, Dr. Reddy's specialization as a "pain management specialist" weighs in favor of her ability to understand Plaintiff's complaints of pain, treat those complaints, and determine Plaintiff's capabilities in spite of her pain. Nevertheless, the ALJ found Dr. Reddy's specialization to be a strike against her, contra to Social Security regulations which require the ALJ to consider a treating physician's specialization in the weighing of that physician's opinion. 20 C.F.R. § 404.1527.

In addition to his failure to properly consider Dr. Reddy's specialization, the ALJ's decision fails to conduct the requisite analysis required by 20 C.F.R. § 404.1527, as it is silent as to the other regulatory factors which must be discussed by an ALJ -- including the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, and the supportability of the treating physician's opinion. Without such analysis, the Court is unable to meaningfully review the ALJ's finding that Dr. Reddy's opinion is not entitled to deferential or controlling weight, or his finding of non-disability. The Court cannot say, for example, that Dr. Reddy's opinion is "so patently deficient that the Commissioner could not possibly credit" it and therefore excuse the ALJ's failure in this case. *Wilson*, 378 F.3d at 547. Similarly, the ALJ's silence on the 20 C.F.R. § 404.1527 factors "denotes a lack of substantial evidence," *see Blakley*, 581 F.3d at 07, and deprives the Court of its opportunity to consider whether the ALJ provided "good reasons" for giving less than controlling weight to Dr.

Reddy's opinion. *Id.* at 406-07.

Because the ALJ failed to consider the factors listed in 20 C.F.R. § 404.1527 in determining the weight to give Dr. Reddy's opinion, the Court finds that the ALJ's rejection of her functional limitation assessment is not supported by substantial evidence. *See Blakley*, 581 F.3d at 406-07. The ALJ's decision in this respect constitutes legal error warranting a reversal and remand of this case for reconsideration of Plaintiff's RFC, including proper analysis of the weight to be given to the treating physician's functional limitation assessments consistent with the treating source regulation. 20 C.F.R. § 404.1527; *Wilson*, 378 F.3d at 546.

The Court has thoroughly examined and considered Plaintiff's other arguments, but finds them to be unpersuasive. The Court notes that an ALJ does not commit reversible error in finding an impairment not to be "severe" at Step Two of his disability analysis where the ALJ determines that the claimant has at least one other severe impairment, and then continues with the remaining Steps in the disability evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Because the ALJ found that Plaintiff had a severe lumbar impairment and proceeded thereafter to Step Three through Step Five, no reversible error was committed at Step Two of his sequential evaluation. *Id.* Rather, as discussed above, the basis for reversal in this case is the ALJ's failure to properly weigh and analyze the medical evidence submitted by Plaintiff's treating physician, as mandated by 20 C.F.R. § 404.1527. Accordingly, the case must be remanded for further analysis and reconsideration.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds that, as more fully explained above, the ALJ's decision is unsupported by substantial evidence, and recommends that it be reversed and

remanded to the Commissioner of Social Security under the fourth sentence of 42 U.S.C. § 405(g). *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 173-76 (6th Cir.1994).

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED;**

2. This matter be **REMANDED** to the Commissioner under the fourth sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

November 28, 2012                                            **s/Michael J. Newman**
                                                                                   United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).